# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:17-CV-00617-CHL

**STEPHANIE L. MONTGOMERY,**                            **Plaintiff,**

**v.**

**COMISSIONER OF SOCIAL SECURITY,**                  **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint (DN 1) of Plaintiff, Stephanie Montgomery ("Montgomery"). In her Complaint, Montgomery seeks judicial review of the Commissioner's final decision denying her supplemental security income ("SSI"). *See* 42 U.S.C. § 405(g) (2017). Montgomery filed her Fact and Law Summary on February 12, 2018, and the Commissioner filed a Fact and Law Summary on May 11, 2018. (DNs 14, 19.) The Parties have consented to the jurisdiction of a magistrate judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 20.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I.  BACKGROUND

Montgomery filed an application for SSI on February 25, 2016.[1] (DN 12-5, at PageID # 292-93.) In her application, Montgomery alleged disability beginning June 1, 2006. (*Id.* at 292.) On April 27, 2017, Administrative Law Judge John Price (the "ALJ") conducted a hearing on Montgomery's application. (DN 12-2, at PageID # 80-113.) In his decision dated June 7, 2017,

---
[1] Montgomery, the Commissioner, and the ALJ all refer to Montgomery's application with reference to the date February 24, 2016. (DN 14; DN 19, at PageID # 757; DN 12-2, at PageID # 64.) However, Montgomery's actual application, included in the Administrative Record, is dated February 25, 2016. (DN 12-5, at PageID # 292-93.)

the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 61-73.) In doing so, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since February 24, 2016, the application date. (*Id.* at 66.)

2. The claimant has the following severe impairments: lymphedema of the right upper extremity status post mastectomy, bipolar disorder, obesity, and borderline intellectual functioning. (*Id.*)

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 67.)

4. [T]he claimant has residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except the claimant should not engage in overhead reaching. The claimant is capable of frequent but not constant gross manipulation or handling. The claimant is limited to simple, routine tasks with little to no change in the work routine from day to day. The claimant is limited to work with little to no judgment required. The claimant is limited to work in a low stress setting with no fast-paced production rate demands or quotas. The claimant should avoid contact with the general public and she is limited to occasional, superficial interaction with coworkers and supervisors. (*Id.* at 69.)

5. The claimant is unable to perform any past relevant work. (*Id.* at 72.)

6. The claimant was born on October 6, 1967 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (*Id.*)

7. The claimant has at least a high school education and is able to communicate English. (*Id.*)

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. (*Id.*)

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

  10. The claimant has not been under a disability, as defined in the Social Security Act, since February 24, 2016, the date the application was filed. (*Id.* at 73.)

Montgomery requested review by the Appeals Council, which denied her request on August 16, 2017. (*Id.* at 47-49.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210(a) (2018); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Montgomery is presumed to have received that decision five days later on August 21, 2017. 20 C.F.R. § 422.210(c). Montgomery filed this action on October 6, 2017. (DN 1.)

## II. DISCUSSION

The Social Security Act authorizes payments of disability insurance benefits and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401 – 434, 1381-1383f (2017). An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2018).

### A. Standard of Review

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported

the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see also Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five- Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920 (2018). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. § 416.909 (2018).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Montgomery's Contentions

Montgomery challenges the ALJ's determination of her RFC. Specifically, Montgomery argued that the ALJ failed to analyze the opinion of consultative examiner, Brenda Parker ("Dr. Parker"), PhD., in accordance with applicable law and regulations and that without that opinion, the ALJ's RFC finding was impermissibly based solely on his lay opinion. (DN 14-1, at PageID # 736-40.) Montgomery also argued that because of the ALJ's rejection of Dr. Parker's opinion and because of an intervening change in the agency regulations governing treatment of a claimant's mental limitations, the ALJ impermissibly evaluated her mental limitations himself without any expert opinion. (Id. at 740-41.) The Court will address each argument below.

#### 1. Dr. Parker's Opinion

Dr. Parker performed a consultative examination of Montgomery on May 24, 2016. (DN 12-7, at PageID # 605-11.) Dr. Parked examined Montgomery and opined that she would likely have moderate to severe difficulty with attention; difficulties with learning for purposes of task completion; moderate to severe difficulties with mental persistence and mental pace; at times may require what is said to her to be repeated, depending on its complexity; difficulty understanding what is said to her without simplification; and severe difficulty tolerating the stress of day-to-day work. (*Id.* at 610.) In his decision, the ALJ afforded only some weight to Dr. Parker's opinion, noting that Dr. Parker found Montgomery to be a "vague historian" and observed that Montgomery

had not received consistent mental health counseling throughout the relevant period. (DN 12-2, at PageID # 71.) Montgomery argues that the ALJ erred in his treatment of Dr. Parker's opinion in determining her RFC. (DN 14-1, at PageID # 731-40.)

In making a determination of a claimant's RFC, the ALJ is required to consider the record as a whole, including the claimant's testimony and opinions from the claimant's medical sources. *See* 20 C.F.R. § 416.945(a)(1) (2018). The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not. *Id.* at 375. An examining source "has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with her.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 402.1502). Dr. Parker was an examining source, not a treating source because Dr. Parker assessed Montgomery in person on one occasion after a referral by Commonwealth of Kentucky Disability Determination Services. (DN 12-7, at PageID # 606.)

In affording weight to an examining source, the ALJ is required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). However, a medical opinion from an examining source is "never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376. Further, unlike when an ALJ gives less than controlling weight to the opinion of a treating physician, an ALJ is not required to give "good reasons" for the weight ascribed to an examining physician's opinion. *See Ealy*, 594 F.3d at 514 ("[A]n ALJ is procedurally required to 'give *good reasons* in [his] notice of determination or

decision for the weight [he gave the claimant's] treating source's opinion.' However, this requirement only applies to treating sources." (emphasis added)). Instead, the ALJ must only "say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Here, the Court finds that the ALJ gave sufficient reasons to support his decision to allow the Court to understand his reasoning.

The ALJ was explicit about certain concerns with Dr. Parker's opinion. He stated, "The examiner found some sever[e] difficulties, but also noted that the claimant was a vague historian and the claimant has not received consistent mental health counseling throughout the relevant period." (DN 12-2, at PageID # 71.) The first concern called into question the examination by Dr. Parker. If Montgomery was not forthright and able to answer the questions posed, it would be proper for the ALJ to question the reliability of Dr. Parker's assessment. The second concern was consistent with what Montgomery conceded: she received limited health counseling throughout the relevant period. (DN 14-1, at PageID # 738.) By highlighting this statement, the ALJ was noting that Montgomery's own claims and Dr. Parker's opinion were inconsistent with the record as a whole, one of the factors to be weighed in assessing an expert's opinion. *See Ealy*, 594 F.3d at 514; 20 C.F.R. § 416.927.

That the ALJ viewed Dr. Parker's opinion as inconsistent with the record as whole is further evident from the ALJ's adoption of the findings of the state agency physicians, Dr. Jane Brake, Ph.D ("Dr. Brake") and Dr. Michelle Bornstein, Psy.D., ("Dr. Bornstein"). (DN 12-3, at PageID # 147-48, 151-54 (Dr. Brake); *id.* at 170, 174-76 (Dr. Bornstein).) In June 2016, Dr. Brake determined that Montgomery could understand short, simple work instructions. (*Id.* at 151-52.) In contrast, Dr. Parker determined that Montgomery would have a moderate difficulty with

7

attention and this problem may cause difficulties with learning and task completion. (DN 12-7, at PageID # 610.) Dr. Brake also determined that Montgomery could sustain concentration and attention with simple familiar tasks. (DN 12-3, at PageID # 153.) But Dr. Parker determined that Montgomery would have moderate to severe difficultly with mental persistence. (DN 12-7, at PageID # 610.) Dr. Brake also opined that Montgomery could interact frequently as needed with supervisors and peers sufficiently and Montgomery could respond appropriately to changes in a routine work setting. (*Id.* at 153-54.) While Dr. Parker agreed that Montgomery would not have difficulty adapting to change and she could make her needs known but found she would have severe difficulty tolerating stress of day-to-day work. (DN 12-7, at PageID # 610.)

Dr. Parker's opinion also was inconsistent with Dr. Bornstein's opinion. In August 2016, Montgomery alleged severe worsening of conditions, but Dr. Bornstein opined that the symptoms remained consistent with the previous assessment by Dr. Brake. (DN 12-3, at PageID # 129.) Both Dr. Brake and Dr. Bornstein determined that Dr. Parker's assessment was "an overestimate of the severity of the individual's restrictions / limitations." (*Id.* at 154, 177.) The ALJ ultimately afforded "some weight" to Dr. Parker's opinion and adopted the opinions of Dr. Brake and Dr. Bornstein. (DN 12-2, at PageID # 72.) Based on the adoption of Dr. Brake's and Dr. Bornstein's findings, it is apparent the ALJ viewed Dr. Parker's opinion as inconsistent with the record to a certain extent. It is well-established that "[a]ny record opinion . . . may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x 433, at 439 (6th Cir. 2012) (citing 20 C.F.R. §§ 404.1527, 416.927 and *Ealy*, 594 F.3d at 514). To the extent the ALJ failed to say so

explicitly, the Court finds the failure to do so was harmless error given the evidence in the record of inconsistency.[3]

It should also be noted that the ALJ did not wholly reject the opinion of Dr. Parker. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Indeed, paralleling Dr. Parker's opinion regarding stress, learning difficulties, and repetition, the ALJ limited Montgomery to work in a "low stress setting" and limited her to "simple, routine tasks with little to no change in the work routine from day to day." (DN 12-2, at PageID # 69.) While Montgomery's brief characterizes Dr. Parker's conclusion that she would have "severe difficulty tolerating the stress of day-to-day work" and the ALJ's limitation of Montgomery to "low stress" inconsistent, the Court does not agree that the two are mutually exclusive. (DN 14-1, at PageID # 739.) As it is clear from review the ALJ's decision that he weighed the appropriate factors in assessing Dr. Parker's opinion, the Court finds no error in the ALJ's treatment of the same.

Montgomery then argued that without Dr. Parker's opinion, the ALJ's RFC finding was impermissibly based on his own lay opinion. (DN 14-1, at PageID # 740.) The Court disagrees. Here, in making his RFC determination, the ALJ considered Montgomery's testimony, a prior consultative examination by Dr. Klem, the opinions of Dr. Brake and Dr. Bornstein, Dr. Parker's opinion, and a prior psychological evaluation by Jo Spath, APRN. (DN 12-2, at PageID # 69-72.) The ALJ also cited to numerous medical records, including office treatment records from Communicare and progress notes from Montgomery's doctors. (*Id.*). This is far from a lay opinion. Further, the final determination of Montgomery's RFC is explicitly the domain of the

---

[3] While Montgomery argues that the ALJ's failure to give reasons constituted reversible error, the Court disagrees. Montgomery's cite to *Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) is unavailing. *Wilson* involved an ALJ's failure to give good reasons for rejecting the opinion of a treating physician, not an examining physician like Dr. Parker. The Sixth Circuit has elsewhere found harmless error where an ALJ "failed to explain why he favored several examining physicians' opinions over another's." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 507 (6th Cir. 2006). The Court finds the ALJ's failure to explicitly state his conclusion that Dr. Parker's opinion was inconsistent with the remainder of record here to be equivalent to the error in *Kornecky* and, therefore, harmless.

9

ALJ, not any examining or consulting physician. *See, e.g.*, *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004). Therefore, the Court finds no error in the evidence on which the ALJ based his RFC determination.

Accordingly, the Court finds that the ALJ properly followed the rules regarding the weight to be ascribed to opinion evidence and that his RFC finding is supported by substantial evidence.

### 2. New Paragraph B Criteria

Montgomery also argued that because of an intervening change in regulations and the ALJ's rejection of Dr. Parker's opinion, the ALJ had "an obligation to have this case reviewed by a State Agency psychologist or psychiatrist." (DN 14-1, at PageID # 740.) A closer examination of both the ALJ's RFC finding and the applicable regulations are necessary to both understand and dispose of this argument.

Regarding Montgomery's mental limitations, the ALJ found at Step Two that Montgomery's bipolar disorder and borderline intellectual functioning were severe impairments that "significantly limit[ed] the ability to perform basic work activities . . . ." (DN 12-2, at PageID # 66.) At Step Three, the ALJ found that Montgomery did not have an impairment or combination of impairments that met or was equal in severity to a Listing, including a specific discussion of whether Montgomery met the so-called "paragraph B" criteria of Listing 12.04. (*Id.* at 67.) Applying the criteria, the ALJ found Montgomery had only a moderate limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing herself. (*Id.* at 67-68.) The ALJ then stated that his RFC "reflect[ed] the degree of limitation [he] ha[d] found in the 'paragraph B' mental functional analysis." (*Id.* at 69.)

However, the ALJ was the only individual to assess whether Montgomery met those particular "paragraph B" criteria due to an intervening change in the regulations. On August 19, 2010, the Social Security Administration ("SSA") published a notice of proposed rulemaking in the Federal Register setting forth revised medical criteria for evaluating mental disorders. Revised Medical Criteria for Evaluating Mental Disorders, 75 Fed. Reg. 51,336 (Aug. 19, 2010). On September 26, 2016, the SSA published final rules regarding the same, indicating that these rules would be effective for new applications filed on and claims that were pending on or after January 17, 2017. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138 (Sept. 26, 2016). Specifically, the revised criteria changed the "paragraph B" criteria, which are both related to the determination of whether an individual meets the § 12.00 Listings for Mental Disorders and incorporated into the "special technique" for assessing mental impairments set forth in 20 C.F.R. §§ 404.1520a and 416.920a. 20 C.F.R. §§ 404.1520a, 416.920a (2016). Under the prior paragraph B criteria, the ALJ examined whether the claimant was limited in his or her (1) activities of daily living; (2) social functioning; or (3) concentration, persistence, or pace; and (4) whether the claimant experienced episodes of decompensation. 20 C.F.R. Pt. 404, Subpt. P, § 12.00C (2016); 20 C.F.R §§ 404.1520a, 416.920a. However, under the new paragraph B criteria, an ALJ evaluates the claimant's (1) ability to understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, § 12.00E(1)-(4) (2017); 20 C.F.R §§ 404.1520a, 416.920a (2017).

While Montgomery's application was filed on February 25, 2016, her application was still pending on January 17, 2017, and the ALJ did not issue his decision until June 7, 2017. (DN 12-2, at PageID # 61; DN 12-5, at PageID # 292-93.) Accordingly, the ALJ properly applied the new medical criteria for evaluating mental disorders to Montgomery. However, because Montgomery

was evaluated at the State Agency level in 2016, her evaluators applied the old paragraph B criteria. Both Dr. Brake, whose examination was dated June 16, 2016, and Dr. Bornstein, whose examination was dated August 15, 2016, found that Montgomery had a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. (DN 12-3, at PageID # 147-48 (Brake); *id.* at 170 (Bornstein).)

Montgomery argued that given the change in criteria, the ALJ was required to have Montgomery evaluated under the new criteria by a qualified psychologist or psychiatrist. (DN 14-1, at PageID # 742.) She cited to 20 C.F.R. § 416.920a(a)'s requirement that the so-called "special technique" be applied "at each level in the administrative review process and argued that the "special technique" was not followed in her case because of the change in criteria. (*Id.* at 743.) However, Montgomery does not dispute that she was properly evaluated by Dr. Brake and Dr. Bornstein under the paragraph B criteria in effect at the time of their evaluations in accordance with the special technique, nor does she dispute that the ALJ properly followed the special technique and documented his findings regarding the paragraph B criteria in his decision. (DN 14-1, at PageID # 744.) She only argues that the failure to obtain a new evaluation given the change in criteria violated the regulations. As noted by the Commissioner, Montgomery cited no authority specifically requiring an ALJ to obtain an additional medial opinion due to the intervening change in the regulations. As Montgomery has cited to no such authority, the Court finds that there was substantial evidence in the record from which the ALJ could base his findings on the new paragraph B criteria, including the evaluations done by Dr. Brake and Dr. Bornstein under the old criteria.

A close examination of the new versus old paragraph B criteria indicates significant areas of overlap such that an evaluation of an individual under the old criteria would inform and assist in evaluating an individual under the new criteria. In their proposed rules, the SSA explained that the new paragraph B criteria reflect "the mental abilities an adult uses to function in a work setting . . . ." 75 Fed. Reg. at 51,340. The SSA clarified that certain former paragraph B criteria, such as activities of daily living, were removed because they involved multiple of the mental abilities reflected in the new criteria, and therefore, shouldn't be considered in a single separate area. *Id.* at 51,341. Notably, the SSA did not indicate that activities of daily living were in any way irrelevant under the new criteria. The SSA also noted that while the B1 and B4 criterion were new, other criteria were related to the prior version. *Id.* at 51,340-41. For example, the B2 criterion was related to the prior criterion, though slightly different due to its focus on the "mental abilities needed to work. *Id.* at 51,341. And the B3 criterion was the same as the prior version except that it reflected that a person is required to maintain concentrate, persist, *and* maintain pace. *Id.* Further, the SSA noted that even though the criteria themselves changed, the SSA was not changing "the types of evidence" it considered in assessing a person's limitations under the paragraph B criteria. *Id.* at 51,340. Given the overlap, it was proper for the ALJ to rely on the prior opinions of Dr. Brake and Dr. Bornstein under the old criteria to make a determination under the new criteria.

Further, the ALJ supported his conclusions regarding the paragraph B criteria with substantial evidence. In evaluating the criteria, the ALJ cited to Montgomery's own testimony, office treatment records and progress notes, Dr. Parker's opinion, and the opinion of prior consultative examiner Dr. Klem. (DN 12-2, at PageID # 67-68.) Accordingly, the Court disagrees with Montgomery's contention that the ALJ improperly interpreted "raw medical data" as a

layman. As Montgomery has failed to demonstrate that the ALJ failed to follow any specific regulation requiring a new expert opinion on the new criteria and supported his decision with substantial evidence, the Court finds no reversible error in the ALJ's assessment and use of the new paragraph B criteria.

### III. CONCLUSION AND ORDER

For these reasons, IT IS HEREBY ORDERED as follows:

(1) The final decision of the Commissioner of Social Security is **AFFIRMED**, and this action is **DISMISSED** with prejudice.

(2) A final judgment will be entered separately.

cc: Counsel of record